#### UNITED STATES DISTRICT COURT
#### FOR THE EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| DESIRAE LANTRY, individually, and on behalf of all others similarly situated,  )<br><br>    Plaintiff,   )<br><br>v.   )<br><br>CLIENT SERVICES, INC.,   )<br><br>    Defendant.   ) | 4:18-cv-01694-RWS<br><br>The Honorable Judge Rodney W. Sippel |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT CLIENT SERVICES, INC.'S MOTION FOR JUDGMENT ON THE PLEADINGS**

Plaintiff, DESIRAE LANTRY ("Plaintiff"), by and through her counsel, James C. Vlahakis, submit the following as her response in opposition to Defendant CLIENT SERVICES, INC.'S Motion for Judgment on the Pleadings (Dkt. 16):

### I.  Introduction

The First Amended Complaint ("FAC The FAC alleges that Defendant is a "debt collector" and Plaintiff is a "consumer" as these terms are defined by Sections 1692a(3) and 1692a(6)  of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* ("FDCPA"). Dkt. 12, FAC, ¶¶ 16, 19.  The FAC alleges that on October 5, 2017, Defendant sent a standard form collection letter to Plaintiff, a "communication" as defined by the FDCPA, for the purpose of collecting a "consumer" debt allegedly owed by Plaintiff. FAC, ¶¶ 2, 4, 8, 23-24, 26.  The issue before the Court is whether a disclosure statement violates the FDCPA.  The so-called "Chase Disclosure" language states as follows:

> *If we settle this debt with you for less than the full outstanding balance, Chase may offer you less favorable terms in the future for some Chase products or services, or may deny your application.

Dkt. 12, at 10; Dkt. 12-2, at 3 ( at times the "Chase Disclosure").

1

Defendant admits that the Chase Disclosure is required by Chase. Dkt. 17, Defendant's Memorandum of Law in Support of its Motion for Judgment on the Pleadings, a p. 1 (hereafter "Defendant's MMJP" or the "MMJP"). *See also*, FAC, ¶ 28. The MMJP, however, ignores dozens of well pled allegations which demonstrate that the Chase Disclosure violates Sections 1692e, 1692e(2)(A), 1692e(1) and 1692f the FDCPA. *See* Counts I, II, III and IV of the FAC.  Defendant ignores large parts of the FAC to avoid confronting the allegations head-on.

## II. Summary of Allegation's That Are Ignored by Defendant

First, Defendant's MMJP ignores the allegations which explain that Chase required Defendant to include the Chase Disclosure Language as a means to cause Plaintiff (and other consumers like her) to pay more of the subject debts. The logic behind these allegations is obvious – Chase wants to collect as much of the defaulted debt as possible and Defendant wants to obtain a larger collection fee for the debts that it collects on behalf of Chase.

Paragraphs 30 through 49 detail how the Chase Disclosure is worded to induce consumers to pay *more* towards the subject debt to avoid consumers receiving "less favorable terms" from Chase in the future.  The Chase Disclosure is also worded to induce consumers to pay *more* towards the subject debt based upon the inverse suggestion of the Chase Disclosure - that consumers may receive more favorable terms and avoid the denial of their application of they pay more towards the subject debt.

> 30. The above quoted language improperly attempted to influence Plaintiff's thought process with regard to paying off the subject debt by informing her that it would *not be beneficial* for her to settle the debt by paying less than the amount she allegedly owed.

> 31. The [Chase Disclosure] language improperly attempted to influence Plaintiff's thought process with regard to paying off the subject debt by informing her that it would *be beneficial* for her to pay the full amount she allegedly owed.

2

32. The [Chase Disclosure] language improperly attempted to influence Plaintiff's thought process with regard to paying off this debt by *warning* Plaintiff that if she paid "less than the full outstanding balance, Chase may offer you less favorable terms in the future for some Chase products or services."

33. The [Chase Disclosure] language improperly attempted to influence Plaintiff's thought process with regard to paying off this debt by warning Plaintiff that if she paid "less than the full outstanding balance" Chase "may deny your application."

34. The [Chase Disclosure] language was intended to give debtors like Plaintiff a confusing, Hobson's Choice – pay a portion of the debt and run the risk receiving "less favorable terms in the future for some Chase products or services" or having an "application" denied, or pay the full amount owed and ***not*** run the risk receiving "less favorable terms in the future for some Chase products or services" or having an "application" denied.

35. Because it is reasonable and plausible to contend that people receiving collection letters from Defendant may have limited funds available to pay off their debts, the impact of this Hobson's Choice if more pronounced and gut wrenching.

36. On information and belief, this above quoted statement is false, misleading and/or deceptive because Chase *would not have offered Plaintiff more favorable terms* if she paid off her entire debt.

37. [B]y falling behind on payments, having her account charged off and/or sent to outside collections, it is highly plausible that Plaintiff *was not in good standing with Chase*.

38. Because Plaintiff fell behind on payments, had her account charged off and/or sent to outside collections, it is highly plausible that Plaintiff *could never be in* good standing with Chase, *even if she fully paid off the subject debt*.

39. [B]y falling behind on payments, having her account charged off and/or sent to outside collections, it is highly plausible that Chase *would never* offer or provide Plaintiff with any loan, product or services from Chase, *even if she paid back the full amount of her de*bt.

40. [I]f an outside collection agency such as Defendant would have collected the full amount owed from Plaintiff, the amount collected would have been reduced by up to 33% as a result of Defendant's contingency-based collection fee.

41. [B]ecause the amount recovered would be less than the full amount owed, is highly plausible that Chase would be unlikely to offer Plaintiff any loan, product or service in the future.

3

42. [The Chase Disclosure] language was false, misleading and deceptive because the language talks in broad and confusing hypotheticals – despite clearly encouraging consumers like Plaintiff to pay the full amount of the debt and obtaining *more favorable terms*.

43. The same scenarios identified in Paragraphs 36 through 42 would also apply to putative class members.

44. By way of a further example, if a consumer desired to save money by settling the debt for less than the amount owed, she/he would be confused, mislead and/or deceived by [The Chase Disclosure]'s ambiguous statement that Chase "may" respond to the lesser payment amount by offering the consumer *less favorable terms* for some *unspecified Chase* products.

45. The [Chase Disclosure] is purposefully worded to avoid making the following clear statement: "if you pay the full amount owed, rather than the discounted settlement offer, Chase *will* offer you more favorable terms in the future for some Chase products or services.

46. As a result of this false, misleading and deceptive [Chase Disclosure] language, a consumer could arguably be misled into thinking that she/he could or would in fact receive more favorable terms in the future for some Chase products or services when this would not be the case.

47. In summary, the [Chase Disclosure] language was prepare[d] to falsely, misleadingly and deceptively suggest to consumers that paying off the "full outstanding balance" would result in more favorable terms.

48. [I]f a consumer desired to save money by settling the debt for less than the amount owed, the [Chase Disclosure] language falsely, misleadingly and deceptively written to cause consumers to pay less than the full amount by stating that Chase "may" respond to the lesser payment amount by denying the consumer's application for some unspecified Chase product or service.

49. [I]f a consumer desired to save money by settling the debt for less than the amount owed, the [Chase Disclosure] language falsely, misleadingly and deceptively was written to cause consumers to pay less than the full amount by stating that Chase could offer "less favorable terms in the future for some Chase products or services" unless recipient paid the total amount she/he owed.

Defendant's Motion does not bother to address, let alone dispute plausibility of the allegations set forth in Paragraphs 31-33, 35, 38, 40, 42, 43, 46, 47, 49 of the FAC. Defendant's Motion, however, circuitously tries to discount paragraphs 37, 39 and 41

4

by suggesting that these allegations are not plausible.  MMJP, pp. 13-14.  Defendant has not asked the court to disregard any of the other allegations cited directly above. All of these allegations are plausible, but we leave it to the court to decide whether Defendant has effectively argued that these allegations should be disregarded.

As set forth in Paragraphs 50 through 54 of the FAC (**a**) it was Chase's intent to *maximize* the amounts recovered by Defendant and (**b**) Defendant knew that it stood to receive more compensation by and through the use of the Chase Disclosure:

> 50. When Chase presented the [Chase Disclosure] language to Defendant and told Defendant to include it the subject form dunning letter, it was Chase's intention that this language would result the recovery of the full amount owed for each subject debt.
>
> 51. When Chase presented the [Chase Disclosure] language to Defendant and told Defendant to include it the subject form dunning letter, it was Chase's intention that this language would discourage recipients from paying the discounted offer.
>
> 52. Defendant knew that it would receive more compensation from Chase on a[] per account basis if the subject language caused more consumers to pay the full amount owed for each debt owed to Chase.
>
> 53. Defendant knew that it would receive more compensation from Chase on a[] per account basis if the subject language discouraged consumers from paying the discounted offer set forth in each individual letter.
>
> 54. [B]y agreeing to use the [Chase Disclosure] language, Defendant plausibly understood that it would increase its income relative to each debt that it collected – if consumers paid the full amount owed.

Chase required it to use the Chase Disclosure.  FAC, ¶ 28.  The MMJP, however, ignores these allegations and/or tries to diminish their impact by contending that the FAC fails to meet the liberal plausibility standard set forth by *Bell v. Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007).  MMJP, pp. 13-16.  Defendant cannot dispute the accuracy of these allegations because Defendant disagrees with the *impact* of these allegations.  As discussed below, the FAC satisfies the *Twombly* pleading standards.

5

Notably, the FAC plausibly sets forth that Defendant failed to engage in an independent review to ensure that the Chase Disclosure complies with the requirements of the FDCPA.  In particular, the FAC alleges that Defendant was not legally obligated to use the Chase Disclosure (nor was Chase obligated to use the Disclosure):

> 55. Since this [Chase Disclosure] language was not mandated by any state law, or any provision of the FDCPA, Defendant had an independent obligation to investigate whether paying the full amount of a debt owed to Chase would result in more favorable terms in the future for some Chase products or services.
>
> 56.  Since this [Chase Disclosure] language was not specifically mandated by any court order or consent de[c]ree, Defendant had an independent obligation to investigate whether paying the full amount of a debt owed to Chase would result in more favorable terms in the future for some Chase products or services.
>
> 57. Since this [Chase Disclosure] was not mandated by any state law, or any provision of the FDCPA, Defendant had an independent obligation to investigate whether paying *less* than the full amount of a debt owed to Chase would less favorable terms in the future for some Chase products or services, or the denial of a future application.
>
> 58. Since this [Chase Disclosure] language was not specifically mandated by any court order or consent de[c]ree, Defendant had an independent obligation to investigate whether paying *less* than the full amount of a debt owed to Chase would less favorable terms in the future for some Chase products or services, or the denial of a future application.

Paragraph 59 of the FAC goes on to allege, as Defendant must accept, that "Defendant is a sophisticated debt collector" and that Defendant knew, or should have known that the Chase Disclosure contained false and misleading disclosures.  In particular, Paragraph 59 alleges that Defendant knew (or should have known) that:

> a. Chase would *not* "offer less favorable terms in the future for some Chase products or services" if a debtor paid less than the total amount owed;
>
> b. Chase would *not* "deny [an] application" if a consumer paid less than the total amount owed;
>
> c. Chase would *not* offer *more favorable* "terms in the future for some Chase products or services" if a debtor paid the total amount owed;

6

    d.    Chase would *not* offer *more favorable* "terms in the future for some Chase products or services" if a debtor paid the total amount owed because of the fact that the debt has been charged off;

    e.    Chase would "deny [an] application" if a debtor paid the total amount owed;

    f.    Chase would "deny [an] application" if a debtor paid the total amount owed because of the fact that the debt has been charged off.

Critically, Paragraph 60 alleges that "Defendant knew that the [Chase Disclosure] language was intended to urge debtors to settle for the full amount owed." Defendant does not address Paragraphs 55-60 in its Motion. The above allegations support why the Chase Disclosure language violated the FDCPA and why this Court should deny Defendant's motion. Further, as detailed in Paragraphs 68 through 71 of the FAC, Defendant knew or should have known, that the Chase Disclosure was confusing, false, deceptive and/or misleading and in violation of the FDCPA because:

    68. . . . Chase would be unlikely to grant a class member more "favorable terms in the future for some Chase products or services" if the class member paid the debt in full.

    69. . . . Chase would be unlikely to grant a class member more 'favorable terms in the future for some Chase products or services' if the class member paid the debt in full because of the fact that the class member incurred a previously unpaid debt, the debt was charged off, or alternatively, the debt would never be fully recouped because Chase would have to pay a collection fee to Defendant – if Chase still owned the debt.")

    70. . . . Chase would be unlikely to grant a class member's application if the class member paid the debt in full.")

    71. . . . Chase would be unlikely to grant a class member's application if the class member paid the debt in full because of the fact that the class member incurred a previously unpaid debt, the debt was charged off, or alternatively, the debt would never be fully recouped because Chase would have to pay a collection fee to Defendant – if Chase still owned the debt.

To recap, as discussed above and argued below, Defendant cannot obtain judgment on the pleadings by cherry picking a handful of allegations (and ignoring

countless others) and arguing that the FAC should be dismissed on the basis that the claims are "plausible" or a "likely" course of action. MMJP, pp. 13-17.

### III. Arguments in Opposition to Defendant's Motion

Defendant's Motion for Judgment on the Pleadings should be denied for the following reasons. First, as noted above, Defendant cannot obtain judgment on the pleadings by broadly categorizing the allegations that undermine its arguments by broadly labeling the allegations as "simply attorney generated, illogical and implausible." MMJP, p. 3. Defendant's next argument is that the Chase Disclosure is a mere "technical violation." MMJP, p. 6. This argument is not fleshed out in any detail. Accordingly, this argument is waived. *Aulston v. Astrue*, 277 Fed. App'x 663, 664 (8th Cir. 2009) (holding that an undeveloped argument is waived). And as discussed above (and as ignored by Defendant), the FAC explains in detail why the Chase Disclosure constitutes a plausible violation of the FDCPA.

Defendant's next argument, as fleshed out in Section B of it Memorandum is that the FAC takes "a bizarre, idiosyncratic and illogical interpretation of the Chase Disclosure." MMJP, pp. 3, 14-15. First, Defendant's argument is not well taken because on its face, the Chase Disclosure language is inherently confusing – and not just to an unsophisticated consumer. According to Defendant, "[a]nything is possible and, in this case, even probable." MMJP, p. 6. Defendant goes on to argue that "Chase has the right to consider prior contractual breaches resulting in under payment in its future credit decisions." *Id*. Plaintiff has *no quarrel with this argument* – Chase is certainly within its rights to review so-called "prior contractual breaches" along with payments towards defaulted debts when it makes decisions regarding "future credit decisions." Words matter, but apparently they do not matter as much to Defendant when Defendant

8

included the disputed disclosure language at the request of Chase – without analyzing whether this gratuitous disclosure language comports with the FCPA.

To be clear, nothing in the FDCPA or any other law, order or otherwise **required** Chase to inform consumers *of what it may **or may not do***.  By agreeing to accept the confusing, deceptive and misleading Chase Disclosure language, Defendant ran the risk that the language could be subject to *more than one plausible reading*.  Bizarrely, Defendant's Motion ignores the fact that the FAC alleges that the Chase Disclosure was specifically drafted to induce consumers to pay more towards their debt.  Defendant also ignores the two elephants in the room – that (**a**) Chase wants consumers to repay as much as possible towards their subject debts and (b) Defendant will maximize its earnings by collecting larger amounts for Chase.  FAC, ¶¶ 50-54.

As noted above, Defendant's Motion distances itself from *plausible* impact that the Chase Disclosure language may have on consumers. Plaintiff will address each of Defendant's argument in turn.  For example, Defendant argues that the use of the word "may" within the Chase Disclosure automatically negates any potential FDCPA violation. MMJP, p. 6 ("Because Chase is telling CSI and Plaintiff what it "may" do if settlement payment is accepted, such statement is true." Defendant's argument misses the point and attempts to obfuscate what Plaintiff is alleging. The FAC alleges that *regardless* of whether the debt is paid in full or settled at the proposed discounted settlement, Defendant knew that Chase *would not* offer more favorable terms to the consumer who settles in full.  FAC, ¶¶ 59-60.  Defendant attempts to dodge this argument by creating its own set off allegations (which it suggests Plaintiff should have alleged, but could not have pled in good faith or at least without sounding "absurd").  According to Defendant:

> For the Chase Disclosure to be logically false, Plaintiff would have to allege and prove the following statement is true: If Chase settles the debt with Plaintiff for less than the full outstanding balance, Chase **will NOT** offer Plaintiff less favorable terms in the future for some Chase

9

> products or services, and Chase **will NOT** deny Plaintiff's application. Nowhere does Plaintiff make this allegation nor can Plaintiff make this allegation because it is absurd.

MMJP, pp. 6-7.

Defendant's next argument goes well beyond the pleadings and seeks to interject a post-hoc justification for the language where Defendant argues:

> it widely known that settling debts for less than the amount owed can have negative effects on a consumer's credit score and, in turn, negative credit scores can lead to less favorable credit terms or denial with Chase.

MMJP, p. 7.

Again, nothing in the FDCPA requires debt collectors, much less creditors, to educate consumers about how paying a portion of a debt may impact their creditworthiness. Defendant goes on to argue that "[t]he unsophisticated consumer *would already be aware of these potential ramifications* of a settlement payment on his or her credit score." *Id.* Defendant cites nothing to support its sweeping generalization. Alternatively, this type of generalization runs contrary to the "unsophisticated consumer" standard which Defendant cites to a pages 5-6 of the MMJP.

Defendant's next argument contends, again, without any support, that consumer's receiving the Chase letter will have a working knowledge of the "potential ramifications of a settlement payment on his or her credit score." MMJP, p. 7. Defendant goes on to argue that the Chase Disclosure's "statement regarding the mere possibility of a settlement payment effecting Chase's credit decisions in the future is true on its face." *Id.* Again, this sweeping argument misconstrues the operative allegations of the FAC.

The case law relied upon by Defendant is misplaced. Defendant places heavy reliance on *Dunbar v. Kohn Law Firm,* 896 F.3d 762, 764 (7th Cir. 2018) where it argues that "the use of the word 'may' in a collection letter is not the same as the use of the

10

word 'will' when it comes to warnings to consumers about potential consequences of accepting a settlement/paying less than the balance." MMJP, p. 7. Again, Defendant tries to argue that the Chase Disclosure does not violate the FDCPA:

> it widely known that settling debts for less than the amount owed can have negative effects on a consumer's credit score and, in turn, negative credit scores can lead to less favorable credit terms or denial with Chase. The unsophisticated consumer would already be aware of these potential ramifications of a settlement payment on his or her credit score. Accordingly, the statement regarding the mere possibility of a settlement payment effecting Chase's credit decisions in the future is true on its face.

MMJP, p. 7.

Defendant is wrong. The court in *Dunbar* was *not* confronted with a debt collection letters that were based upon a false premise – which is the case here. For example, one of the collection letters in *Dunbar* stated that the full balance due was $4,049.08 and offered to settle the debt for $2,631.90. The other letter stated that the balance due was $4,319.69 and invited the consumer to contact the law firm to discuss satisfying her debt obligation for a reduced amount. Both collection letters simply stated: "NOTICE: This settlement *may have tax consequences*." *Id.* at 764 (emphasis supplied). Under these simple facts, *Dunbar* simply found that "[b]oth judges [properly] concluded that alerting debtors that a settlement 'may' have tax consequences is neither false nor misleading." *Id.* 764-65. *Dunbar* went to great lengths to explain how the *simply worded* "tax-consequences warning *is literally true and not misleading* under the objective "unsophisticated consumer" test. (*Id.* at 768) (emphasis supplied). As discussed above, the Chase Disclosure is not "literally true" and it is inherently misleading to an unsophisticated consumer. For good reason, Defendant no longer uses the Chase Disclosure.

The following cases support the denial of Defendant's Motion because the FAC plausibly alleges that conditional use of "may" within the Chase Disclosure is factually

11

inaccurate. *Foster v. AllianceOne Receivables Mgmt.*, 2016 U.S. Dist. LEXIS 56958 (N.D. Ill. Apr. 28, 2016) involved a case where the dunning letter contained the following disclosure: "[p]lease be advised that any settlement which waives $600.00 or more in principal of a debt *may* be reported to the Internal Revenue Service by our client." (Emphasis supplied). *Id.* at *2. Here, Defendant argues that "it widely known that settling debts for less than the amount owed can have negative effects on a consumer's credit score and, in turn, negative credit scores can lead to less favorable credit terms or denial with Chase." MMJP, p. 7.

The consumer in *Foster* alleged that the IRS disclosure language is a "collection ploy designed to deceive or mislead" the consumer into thinking that the IRS could be involved in their debt where there is no set of circumstances in which the IRS would be involved. *Id.* at *5. In response, the debt collector argued that the statement was not misleading on the basis that *it would have obvious* (even to an unsophisticated consumer) *that the IRS disclosure statement would not apply* because the discharged portion of the debt, $251.64, fell below $600.00 threshold was not met. *Id.* at 4-5. As summarized by the court, the court did not side with the defendant in what Plaintiff characterizes as the losing defendant's self-serving, "we said, they said" argument:

> Defendant further argues that the language was an accurate statement of the law and that it was immaterial because it did not apply to Plaintiff. Plaintiff argues that the language is not an accurate statement because there are exceptions to the IRS reporting requirement. As noted by Defendant, the statement in question notes that a settlement "may be reported" to the IRS but does not state that all settlements waiving $600.00 or more would be reported. Further, the language does not imply that any particular outcome might occur except in those cases where a settlement write-off of over $600.00 has occurred.
>
> * * *
>
> At issue in this case is whether the unsophisticated consumer would plausibly be deceived by the Letter, and whether this deception would lead that consumer to settle the matter without negotiating the debt for fear that the settlement would be reported to the IRS.

12

*Id.* at \*4-\*5.  The court ultimately held that "[i]t is plausible that mention of the IRS in a situation *where there is no set of circumstances in which the IRS would be involved could* mislead "a person of modest education and limited commercial savvy." *Id.* \*5-\*6.

The debt collector in *Balon v. Enhanced Recovery Co.*, 190 F.Supp.3d 385 \*(M.D. Penn. 2016) argued that IRS disclosure was an accurate recitation of applicable IRS regulations:

> According to Defendant, "the challenged sentence does not have a reasonable second meaning; it means exactly what it says." (Doc. 4, p. 9). Defendant continues by stating that "[t]he sentence is not subject to multiple interpretations; it is not deceptive or misleading." (Id.). "To the contrary," Defendant claims, "[it] has merely set forth the generally applicable rule."

190 F.Supp.3d at 389-90.

The court in *Balon* rejected the collector's argument that the dunning letter's conditional use of "may" did not violate the FDCPA, holding as follows:

> Moreover, the challenged language's use of the "conditional 'may'. . . *does not remove from the realm of possibility that the least sophisticated debtor might be deceived into thinking [Defendant] must or will report certain settlement amounts to the IRS*, even when it does not intend to, or would not be required to, under the relevant statute and regulations." *Id.* Thus, Plaintiff states a plausible claim that the statement in question is misleading or deceptive under section 1692e(10) of the FDCPA.

*Id.* at 392 (internal citations omitted, emphasis supplied).  *See also, Velez v. Enhanced Recovery Co.*, LLC, 2016 U.S. Dist. LEXIS 57832 (E.D. Pa. May 2, 2016) ("A debt collector's statement is deceptive where it can be reasonably read to have two or more different meanings, one of which is inaccurate, and it is misleading if it states that a certain action is possible even though the debt collector has reason to know that there are facts that make the action unlikely in a particular case").

Defendant's next argument is that the Chase Disclosure "is not false or misleading" contorts the Chase Disclosure language by arguing that a consumer "would

[not] be confused or mislead into paying the entire balance and would believe that paying the entire balance would result in the granting of credit on favorable terms from Chase." MMJP at p. 3. That *is not what the collection letter states*, nor is it precisely what is alleged in the FAC. To be clear, the Chase Disclosure language talks in terms of what will happen if a consumer settles the subject debt with Defendant and Chase "for less than the full outstanding balance." If a consumer weighs his or her options, the Chase Disclosure language *improperly warns* consumers of two consequences if he or she decides to pay less than the full balance: (a) that "Chase may offer you less favorable terms in the future for some Chase products or services" or (b) that "Chase . . . may deny your application."

To be clear, Defendant's Motion ignores the reality of the situation that it has created by its use of the Chase Disclosure language. The Chase Disclosure language highlights certain *false, deceptive and misleading* **consequences** that may occur *if* a debtor actually pays less than the full amount of the debt: that "less favorable terms" and/or "deny[ing] your application" if consumers chose to pay a discounted payment over a paying off the entire debt. This constitutes a false, deceptive, misleading, unfair and unconscionable means of collecting debts owed to Chase. While calling the Chase Disclosure is false, deceptive, misleading, unfair and unconscionable because in reality, Chase will not provide consumers with more favorable terms if the full amount of the debt is paid, in part because of the lost time value of money and collection fees paid to Defendant. FAC ¶¶ 30, 31, 36 ("Chase *would not have offered Plaintiff more favorable terms* if she paid off her entire debt"), 39 ("by falling behind on payments, having her account charged off and/or sent to outside collections, Chase *would never* offer or provide Plaintiff with any loan, product or services from Chase, *even if she paid back the full amount of her d*ebt.") 40-41. Simply stated, "the [Chase Disclosure] language was

14

prepare to falsely, misleadingly and deceptively suggest to consumers that paying off the "full outstanding balance" would result in more favorable terms." FAC ¶ 47.

Defendant incorrectly argues in a conclusory manner at page 3 of its MMJP that "[t]he alleged confusion is simply attorney generated, illogical and implausible because it goes well beyond anything the Letter or the Chase Disclosure states or implies." That is not true. Plaintiff's interpretation of the Chase Disclosure is spot-on, because it specifically warns of two consequences which may occur if a consumer settles the debt "for less than the full outstanding balance" that:

a. "Chase may offer you less favorable terms in the future for some Chase products or services" and/or;

b. "Chase . . . may deny your application."

Conversely, if a consumer takes Defendant and Chase at their word, it is entirely plausible and reasonable to read the Chase Disclosure to suggest that full payment of the subject debt (as opposed to paying merely the proposed discount) *may increase* a consumer's chances of *avoiding less favorable terms*. It is also plausible and reasonable to read the Chase Disclosure language and deduce that paying off the entire debt (as opposed to paying merely the proposed discount) *may increase* a consumer's chances of having his or her application denied. Contrary to Defendant's argument, it is neither "illogical [or] implausible" to interpret Chase's chosen words this way.

Defendant contends that virtually **no** "defaulted consumer" will "pay[] off the entire balance of even consider[] paying off the entire balance, a result of the Chase Disclosure, and after reviewing the 80% discount offer[.]" MMJP, p.3. This argument is improper in the context of a motion for judgment on the pleadings because Defendant is interjecting its own (self-serving) interpretation of what consumers will not do after reading of the Chase Disclosure. Defendant is making a lot of presumptions of so-called "defaulted consumers." Defendant is also undermining the Chase Disclosure language

15

by suggesting (again, without any support) that the language will not have any impact on and defaulted consumers. Then why include the language at all?

### IV.     Conclusion

Contrary to Defendant's position, it is both plausible and realistic for Plaintiff to allege that the Chase Disclosure language can result in both scenarios: (a) defaulted consumers paying off the entire balance, or (b) defaulted consumers considering to pay off the entire balance - as a result of the Chase Disclosure, and after reviewing the 80% discount offer. Again, the letter warns consumers that "Chase may offer you less favorable terms in the future for some Chase products or services", or that Chase "may deny your application." FAC ¶¶ 46-50. Words matter. The Chase Disclosure language can both entice and scare consumers into *considering* different payment options. At the same time, it is not implausible to allege that "it was Chase's intention that this language would result the recovery of the full amount owed for each subject debt." For the above reasons, this Court should deny Defendant's Motion for Judgment on the Pleadings, and conclude that the FAC plausibly states violations of Sections 1692e, 1692e(2)(A), 1692e(1) and 1692f the FDCPA.

Plaintiff is no longer proceeding on her theory that the collection letter violates the FDCPA by using the word "Chase." See FAC ¶¶ 72-85

WHEREFORE, for the reasons set forth above, Plaintiff respectfully requests that this Honorable Court deny Defendant's Motion for Judgment on the Pleadings, and award all just and reasonable relief in Plaintiff's favor and against Defendant.

       Plaintiff DESIRAE LANTRY, individually,
       and on behalf of all others similarly situated,

       By: <u>/s/ James C. Vlahakis</u>
       James Vlahakis
       SULAIMAN LAW GROUP, LTD.
       2500 South Highland Avenue, Suite 200
       Lombard, Illinois 60148
       (630) 581-8181 telephone
       (630) 575-8188 facsimile
       jvlahakis@sulaimanlaw.com

**Certificate of Service**

I hereby certify that a true and correct copy of the above and foregoing has been electronically filed **via CM/ECF,** which will automatically send email notification of such filing to the following known counsel of record on April 10, 2019.

By:   /s/ James C. Vlahakis
James Vlahakis